**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

    v.

JOHN CHARLES KUCHINSKI,
      *Defendant-Appellant.*

No. 05-30607

D.C. No.
CR-04-00149-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
October 24, 2006—Seattle, Washington

Filed November 27, 2006

Before: Alex Kozinski and Ferdinand F. Fernandez,
Circuit Judges, and Cormac J. Carney,* District Judge.

Opinion by Judge Fernandez

---

*The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

18789

**COUNSEL**

Brad L. Arndorfer, Arndorfer Law Firm, P.C., Billings, Montana, for the appellant.

Marcia Hurd, Assistant U.S. Attorney, Billings, Montana, for the appellee.

**OPINION**

FERNANDEZ, Circuit Judge:

John C. Kuchinski appeals his conviction and sentence for receipt and possession of child pornography. 18 U.S.C. §§ 2252A(a)(2), (a)(5)(B). Principally, he asserts that his prosecution for receipt and possession violated the double jeopardy clause,[1] that any use of the United States Sentencing Guidelines violates the separation of powers doctrine, and that he was improperly sentenced when all child pornography images on his computer were counted for sentencing purposes. We affirm his conviction, but vacate his sentence and remand.

---

[1]U.S. Const. amend. V.

## BACKGROUND

After obtaining information that Kuchinski was involved in child pornography, the FBI obtained a search warrant for his computer. Upon execution of that warrant, between 15,120 and 19,000 separate images of child pornography were recovered therefrom. Sixteen of those images were located in the computer's downloaded files and 94 were located in its deleted files (recycle bin). Kuchinski does not argue that he is not responsible for the possession of those images. However, 1,106 images were in the Active Temporary Internet Files and another 13,904 to 17,784 images were in the Deleted Temporary Internet Files.[2] Thereafter, Kuchinski was indicted for receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (count I), possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (count II), and forfeiture of his computer equipment, 18 U.S.C. § 2253 (count III). He pled not guilty.

Kuchinski then entered into a plea agreement which provided that he would plead guilty to possession of child pornography and admit the forfeiture, whereupon the government would dismiss the receipt of child pornography count. Alas, although the plea agreement spelled out the fact that Kuchinski understood he was pleading to a charge which carried a maximum term of imprisonment of ten years, at the change of plea hearing he argued that the ten-year maximum term mandated by the PROTECT Act[3] did not apply to him. The government disputed that, said it was a brand new issue, and declared that it was not willing to go forward with the plea agreement if Kuchinski refused to plead to charges under the PROTECT Act. After some discussion, the district court refused to accept or approve the plea agreement at that point. The court then continued the hearing to a later date.

---

[2]These are sometimes hereafter referred to as the cache files.

[3]PROTECT Act of 2003, Pub. L. No. 108-21, 117 Stat. 650 (2003).

At the later hearing, it became apparent that Kuchinski would not accept the plea agreement as presented, and he, instead, announced that he was prepared to plead guilty to to all three counts of the indictment, if that could be a conditional plea. The government, however, refused to agree to a conditional plea. Therefore, Kuchinski did plead guilty to possession of child pornography (count II) and admitted the forfeiture (count III). That left the receipt of child pornography charge (count I) for trial.

But Kuchinski still had one more trick up his sleeve. He, in effect, contended that because all elements of possession of child pornography were incorporated into the elements of receipt of child pornography, it would violate double jeopardy if the district court proceeded to trial on the latter count. The district court was not convinced and did proceed to hold a bench trial at which Kuchinski was found guilty.

Then came sentencing and a host of new objections. The only objections relevant on this appeal are Kuchinski's claims that: since the PROTECT Act, the separation of powers doctrine is violated because the United States Sentencing Commission need not have any judges on it; the PROTECT Act also removes sentencing discretion from district judges and, thereby, offends due process; and the district court erred when it calculated the number of child pornography images for which Kuchinski would be charged, a calculation that affected his Sentencing Guideline offense level. *See* USSG § 2G2.2(b)(6).[4]

The district court considered and rejected Kuchinski's challenges and sentenced him to seventy months imprisonment and three years of supervised release on both counts, with the sentences to run concurrently. This appeal followed.

---

[4]Unless otherwise stated, all references are to the Sentencing Guidelines effective as of November 1, 2003.

### JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review claims that the district court is required to enforce a plea agreement de novo. *See United States v. Fagan*, 996 F.2d 1009, 1013 (9th Cir. 1993). We also review claims that a rule or statute violates the separation of powers doctrine de novo. *See United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir. 1994). Similarly, we review claims of double jeopardy violations de novo. *See United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005). And, as with other constitutional issues, we review claims that the Sentencing Guidelines are unconstitutional de novo. *See United States v. Leasure*, 319 F.3d 1092, 1096 (9th Cir. 2003).

We review the district court's interpretation of the Sentencing Guidelines de novo. *See United States v. Nielsen*, 371 F.3d 574, 582 (9th Cir. 2004). Moreover, we review applicability of the Sentencing Guidelines to a particular offense de novo. *See United States v. Alcarez-Camacho*, 340 F.3d 794, 796 (9th Cir. 2003). The district court's applications of the Sentencing Guidelines to the facts of a case are reviewed for an abuse of discretion. *See United States v. Miguel*, 368 F.3d 1150, 1155 (9th Cir. 2004). However, factual findings in the sentencing phase are reviewed for clear error. *Id.*

### DISCUSSION

Kuchinski launches a number of attacks on the process that led to his conviction on both substantive counts—receipt of child pornography and possession of child pornography. We will first consider those. Thereafter, we will consider his attack on the whole Guideline regime as well as its application to those convicted of child pornography. Finally, we will

consider his assertion that the Guideline range was calculated improperly.

## A.   *The Findings of Guilt*

### (1)   *The Plea Agreement*

Kuchinski insists that once the government entered into a plea agreement, it was absolutely bound to the agreement's terms, even before the district court accepted the agreement. He is wrong.

**[1]** Had the district court already accepted the plea agreement, the government could not have easily withdrawn from it. *See Fagan*, 996 F.2d at 1013. But here the district court had not yet accepted it and "[a] plea agreement that has not been entered and accepted by the trial court does not bind the parties." *Id.*; *see also United States v. Alvarez-Tautimez*, 160 F.3d 573, 576-77 (9th Cir. 1998); *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992); *cf. Mabry v. Johnson*, 467 U.S. 504, 507-08, 104 S. Ct. 2543, 2546, 81 L. Ed. 2d 437 (1984). We recognize that where detrimental reliance is shown, the government may be bound even before the district court accepts the agreement,[5] but no detrimental reliance appears here.

### (2)   *The Attempt to Enter a Conditional Plea*

Once his allonge regarding the plea agreement was parried, Kuchinski tried to unilaterally enter a plea to all counts, while preserving his claim about the plea agreement. When the government refused to accede to that new proposition, Kuchinski complained that Federal Rule of Criminal Procedure 11(a)(2) was an unconstitutional violation of the separation of powers

---

[5]*See Savage*, 978 F.2d at 1138; *McKenzie v. Risley*, 842 F.2d 1525, 1536 n.22 (9th Cir. 1988) (en banc), *approving of McKenzie v. Risley*, 801 F.2d 1519, 1527-28 (9th Cir. 1986).

doctrine because permitting a conditional plea was an issue that should be left to the courts alone. Again, he is wrong.

**[2]** It is, of course, important to maintain a separation of powers, lest liberty be overturned by an undue concentration of power in one of the branches of the government. *See Mistretta v. United States*, 488 U.S. 361, 380-82, 109 S. Ct. 647, 659-60, 102 L. Ed. 2d 714 (1989). But "the greatest security against tyranny—the accumulation of excessive authority in a single Branch—lies not in a hermetic division among the Branches, but in a carefully crafted system of checked and balanced power within each Branch." *Id.* at 381, 109 S. Ct. at 659-60. Thus, "our constitutional system imposes upon the Branches a degree of overlapping responsibility, a duty of interdependence as well as independence the absence of which 'would preclude the establishment of a Nation capable of governing itself effectively.' " *Id.* at 381, 109 S. Ct. at 659; *see also United States v. Ray*, 375 F.3d 980, 995 (9th Cir. 2004).

**[3]** None of the dire consequences that the doctrine seeks to protect us from are threatened by a rule providing that a defendant may enter a conditional guilty plea "[w]ith the consent of the court and the government." Fed. R. Crim. P. 11(a)(2). It is true that courts do have an interest in the efficient administration of justice,[6] but it is far from clear that the taking of a conditional guilty plea will always be efficient. In fact, it may cause what almost amounts to an interlocutory appeal, and result in a great loss of ultimate efficiency. *See* Fed. R. Crim. P. 11(a)(2) advisory committee's notes. It may also invade the Executive's ultimate ability to fully and fairly pursue a conviction, and the government does have an interest in that pursuit. *See Ohio v. Johnson*, 467 U.S. 493, 502, 104 S. Ct. 2536, 2542, 81 L. Ed. 2d 425 (1984).

---

[6]*See, e.g., Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 1720-21, 135 L. Ed. 2d 1 (1996); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *In re Extradition of Kirby*, 106 F.3d 855, 860 n.5 (9th Cir. 1996).

**[4]** At any rate, while Kuchinski sees great danger to our system, we are not gallied by his nightmare. Rather, we see a somewhat common occurrence in a slightly different setting. In effect, the rule simply provides for a resolution short of trial when both parties and the court approve of it. We perceive no danger that a "commingling of functions," if commingling it be, will result in an encroachment on one branch or an improper aggrandizement of another branch. *Ray*, 375 F.3d at 995; *cf. United States v. U.S. Dist. Court*, 464 F.3d 1065, 1066-67 (9th Cir. 2006) (per curiam) (under Fed. R. Crim. P. 23(a) district court improperly granted defendant's motion for a bench trial when government did not agree).

(3) *Double Jeopardy*

When Kuchinski's attempt to have things his way was parried, the government's riposte was "go to trial." The district court agreed, but Kuchinksi sought to avoid that result with the claim that once he pled guilty to possession of child pornography (count II), he could not be tried for receipt of child pornography (count I). That was because, he said, the former was a lesser included offense of the latter. While the argument has some plausibility on its face,[7] it is based on a flawed reading of double jeopardy law.

In a case where a defendant was tried in a single prosecution with "greater and lesser included offenses," but pled guilty to a lesser offense before trial, the Supreme Court declared that double jeopardy was not implicated in his trial on the greater offense. *Johnson*, 467 U.S. at 500, 104 S. Ct. at 2541. The Court reiterated that proposition in *Ball v. United*

---

[7]*See United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006) ("Generally, federal statutes criminalizing the receipt of contraband require a knowing acceptance or taking of possession of the prohibited item." (internal quotation marks omitted)); *see also United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (receiving materials is taking possession of them).

*States*, 470 U.S. 856, 859, 860 n.7, 105 S. Ct. 1668, 1670, 1671 n.7, 84 L. Ed. 2d 740 (1985) (stating that a person can be prosecuted simultaneously for both receiving a firearm and for possessing that same firearm); *see also Jose*, 425 F.3d at 1246-47 (stating that a person can be prosecuted for greater and lesser included offenses in the same indictment).

**[5]** In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932), the Court held that in order for a defendant to be punished on multiple counts, each count "requires proof of a fact which the other does not." Here, Kuchinski was charged with two separate counts of receiving and possessing child pornography. But he was not punished separately for these counts, because his possession and receipt convictions were grouped pursuant to USSG § 3D1.2(d) for the purposes of the Guidelines calculation. And "[w]hile the Double Jeopardy Clause may protect a defendant against cumulative *punishments* for convictions on the same offense, the Clause does not prohibit the State from *prosecuting* [defendant] for such multiple offenses in a single prosecution." *Johnson*, 467 U.S. at 500, 104 S. Ct. at 2541 (emphasis added).

**[6]** Therefore, Kuchinski's attack on his trial for receipt of child pornography must fail.

**[7]** Kuchinski does not appear to argue that he should not have had convictions and judgments entered for both receipt and possession of child pornography, even if it were proper to try him for both offenses. If, as it seems, the counts were based on the same acts, entering judgment on both of the offenses would be improper. Nothing in the statutory scheme suggests that Congress intended that there be two punishments for a single act and courts cannot ignore the collateral consequences, which are not eliminated by concurrent sentencing. *See Ball*, 470 U.S. at 861-65, 105 S. Ct. at 1671-73; *United States v. Martin*, 732 F.2d 591, 592-93 (7th Cir. 1984). We recognize that Kuchinski's failure to clearly raise and

argue this particular issue would generally waive it. However, because he did raise a double jeopardy issue and because we must vacate the judgment and sentence, upon remand the district court should revisit this question also and, unless some considerations not presently apparent to us require otherwise, the district court should vacate the conviction on one of the counts without prejudice to reinstating it should the other count later fall on either direct or collateral review. *See Ball*, 470 U.S. at 865, 105 S. Ct. at 1673-74; *Jose*, 425 F.3d at 1247; *Martin*, 732 F.2d at 592-93.

B.   *Kuchinski's Sentencing*

   (1)   *The Sentencing Commission's Composition; Separation of Powers*

   [8] Kuchinski first claims that the Sentencing Guidelines are all unconstitutional. He does so because, as he points out, when first enacted in 1984, 28 U.S.C. § 991(a) provided that in constituting the Sentencing Commission: "[a]t least three members shall be federal judges . . . ." Those were to be selected by the President from a list of six judges recommended by the Judicial Conference of the United States. *Id.* Section 401(n) of the PROTECT Act changed that. Now, § 991(a) provides that "[n]ot more than 3 of the members shall be Federal judges . . . ." That, argues Kuchinski, violates separation of powers because it is possible that there would be no judges on the Sentencing Commission, and the judges would never constitute a majority of the seven voting members of that body. *See* 28 U.S.C. § 991(a).

   [9] The difficulty with that argument is that § 991(a) always contemplated the possibility that judges would be less than a majority, and the Supreme Court did not see that as a flaw in its composition. Rather, it was content with the fact that the body was located in the judicial branch, regardless of its composition.[8] It also noted that the placement of an admin-

---

[8]*Mistretta*, 488 U.S. at 384-85, 109 S. Ct. at 661.

istrative agency like the Commission in the judicial branch did not unite its powers with those "of the Judiciary in a way that has meaning for separation-of-powers analysis,"[9] or prevent "the Judicial Branch from accomplishing its constitutionally assigned functions,"[10] or "involve a degree of political authority inappropriate for a nonpolitical Branch."[11]

Perhaps more to the purpose, the Court expressed no concern about the possibility that judges would not control the Sentencing Commission, but, rather, addressed the difficulty presented by the presence of any judges on the Commission. *See Mistretta*, 488 U.S. at 397, 109 S. Ct. at 668; *see also Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245, 1254-60 (9th Cir. 1988) (pointing out problems with the placement of judges *on* the commission), *vacated sub nom.*, *United States v. Chavez-Sanchez*, 488 U.S. 1036, 109 S. Ct. 859, 102 L. Ed. 2d 984 (1989).

The Court then declared that judges could undertake "extrajudicial duties,"[12] that the "power . . . these judges wield as Commissioners is not judicial power,"[13] "that the participation of federal judges on the Sentencing Commission does not threaten, either in fact or in appearance, the impartiality of the Judicial Branch,"[14] and, finally, that the "mixed nature of the Commission" does not require "Article III judges to share judicial power with nonjudges."[15] In short, "the Commission is not a court and exercises no judicial power."[16]

---

[9]*Id.* at 393, 109 S. Ct. at 666.

[10]*Id.* at 396, 109 S. Ct. at 667 (internal quotation marks omitted).

[11]*Id.* at 396, 109 S. Ct. at 667.

[12]*Id.* at 398, 109 S. Ct. at 668.

[13]*Id.* at 404, 109 S. Ct. at 671.

[14]*Id.* at 407, 109 S. Ct. at 673.

[15]*Id.* at 408, 109 S. Ct. at 674.

[16]*Id.*

**[10]** In other words, the real danger to separation of powers was in the requirement that judges perform nonjudicial duties by serving on the Sentencing Commission, and the amendment to § 991(a) has allayed that danger. The amendment certainly did not exacerbate the danger and did not violate separation of powers principles.

(2) *Individualized Sentencing*

By enactment of § 401(a) of the PROTECT Act, Congress sought to restrict the discretion of sentencing judges in the area of crimes against children. 18 U.S.C. § 3553(b)(2). It provided that courts "shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Id.* Kuchinski asserts that the removal of discretion from judges in the sentencing area violates a defendant's right to due process.[17] *See* U.S. Const. amend. V. Kuchnski cites no authority for the dubious proposition that Congress cannot legislate penalties for crimes and leave the judiciary with no ability to deviate from those penalties,[18] but we need not referee a duel over that issue at this time. In fact, in this case the district court made it perfectly clear that it considered the Sentencing Guidelines to be advisory only and did exercise its discretion. Therefore, Kuchinski's concern about what might be wrought by the application of § 3553(b)(2) is of no moment to the sentence imposed upon him. In fine, this is a situation where the parties should

---

[17]He does not challenge the section in question on the basis that it violates the Sixth Amendment to the United States Constitution. *See United States v. Booker*, 543 U.S. 220, 243-44, 125 S. Ct. 738, 755-56, 169 L. Ed. 2d 621 (2005). Other courts have held that it does. *See United States v. Grigg*, 442 F.3d 560, 564 (7th Cir. 2006); *United States v. Selioutsky*, 409 F.3d 114, 117 (2d Cir. 2005); *United States v. Yazzie*, 407 F.3d 1139, 1146 (10th Cir. 2005) (en banc). We express no opinion on the issue.

[18]In fact, it is doubtful that he could find any. *See, e.g.*, *United States v. Hungerford*, No. 05-30500, slip op. 17559, 17569-70 (9th Cir. Oct. 13, 2006); *United States v. Mueller*, 463 F.3d 887, 891-92, (9th Cir. 2006)

delope and, thus, save themselves for a more serious encounter.

### (3)  *Number of Child Pornography Images*

[11] We have made it plain that a person does knowingly receive and possess[19] child pornography images when he seeks them out over the internet and then downloads them to his computer. In fact, we have declared that, "[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it." *Romm*, 455 F.3d at 998; *see also United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002). Thus, Kuchinski properly concedes that he did knowingly receive and possess the 110 images that he downloaded. But he was charged with many more—an additional 13,904 to 17,984 images, which appeared in his cache files. That makes a substantial difference to the calculation of his advisory Guideline range. Pursuant to the Sentencing Guidelines, the base offense level for his offense was 17,[20] and, if the offense involved 110 images, 2 levels would be added to that,[21] but if it included over 600 images, 5 levels would be added.[22] The difference is wholly related to the cache files. Did Kuchinski knowingly receive and possess the images in those files, or, rather, does the evidence support a determination that he did?[23] We think not.

According to the evidence before the district court, when a person accesses a web page, his web browser will automati-

---

[19]*Romm*, 455 F.3d at 998 (seeking child pornography out and exercising dominion and control over it results in possession).

[20]USSG § 2G2.2(a).

[21]USSG § 2G2.2(b)(6)(A).

[22]USSG § 2G2.2(b)(6)(D).

[23]There is no assertion before us that the cache files images constitute relevant conduct regardless of knowledge or possession. *See* USSG § 1B1.3.

cally download that page into his Active Temporary Internet Files, so that when the site is revisited the information will come up much more quickly than it would have if it had not been stored on the computer's own hard drive. When the Active Temporary Internet Files get too full, they spill excess saved information into the Deleted Temporary Internet Files. All of this goes on without any action (or even knowledge) of the computer user. A sophisticated user might know all of that, and might even access the files. But, "most sophisticated —or unsophisticated users don't even know they're on their computer."[24]

Much of the above also appears in our discussion of this area in *Romm*, 455 F.3d at 997-1001. There we also pointed out that "the cache is a 'system-protected' area, which the operating system tries to prevent users from accessing by displaying a warning that access involves an 'unsafe' system-command." *Id.* at 998. We also noted that a user, who knows what he is doing, can go forward and get access to the cache files anyway. *Id.* In the case at hand, there was no evidence that Kuchinski was sophisticated, that he tried to get access to the cache files, or that he even knew of the existence of the cache files.

There is no question that the child pornography images were found on the computer's hard drive and that Kuchinski possessed the computer itself. Also, there is no doubt that he had accessed the web page that had those images somewhere upon it, whether he actually saw the images or not. What is in question is whether it makes a difference that, as far as this record shows, Kuchinski had no knowledge of the images that were simply in the cache files. It does.

**[12]** While we have not confronted this precise issue, we have come quite close. In *Romm*, 455 F.3d at 995-96, the evi-

---

[24]When asked about this statement, the government expert, IRS Agent Michael Mayott, said: "That is a fair statement, sir."

dence demonstrated that the defendant knew about the cache files and had actually taken steps to access and delete them. On appeal, he conceded knowledge, and contested dominion and control, but we rejected his arguments. *Id.* at 997-98. In so doing, we opined that "to possess the images in the cache, the defendant must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession." *Id.* at 1000. We relied upon a case wherein the Tenth Circuit Court of Appeals had declared that the defendant was properly found guilty where he knew that child pornography images would be sent to his "browser cache file and thus saved on his hard drive." *Tucker*, 305 F.3d at 1204. As the court put it: "Tucker, however, intentionally sought out and viewed child pornography knowing that the images would be saved on his computer. Tucker may have wished that his Web browser did not automatically cache viewed images on his computer's hard drive, but he concedes he knew the web browser was doing so." *Id.* at 1205.

We were also at some pains to distinguish Romm's situation from one where it could be argued that "the cache is an area of memory and disk space available to the browser software, not to the computer user." *United States v. Gourde*, 440 F.3d 1065, 1082 (9th Cir. 2006) (en banc) (Kleinfeld, J., dissenting). In *Romm*, 455 F.3d at 1001, we noted that we were confronting a different situation because Romm did have both knowledge of and access to his cache files.

**[13]** Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.

**[14]** Therefore, on this record it was not proper to consider the cache file images when Kuchinski's offense level for

Guideline purposes was calculated. As a result, the Guideline range was miscalculated, and we must vacate the sentence and remand. *See United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

## CONCLUSION

Kuchinski makes many daedalian arguments about his conviction and sentence. We reject most of them, but we do agree that he was sentenced in error when child pornography images in his cache files, which he neither controlled nor even knew the existence of, were used to calculate his Guideline range.

AFFIRMED as to the determination of guilt. VACATED and REMANDED as to judgment and sentence.