Filed 10/17/13

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055162 |
| v. | (Super.Ct.No. FVA1000035) |
| CLARK ALEXANDER MAHONEY, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Dwight W. Moore, Judge. Affirmed with directions.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant, Clark Alexander Mahoney, Jr., of possessing child pornography or child erotica.[1] (Pen. Code, § 311.11, subd. (a).)[2] He was granted probation and appeals, claiming there was insufficient evidence that the crime occurred within the statute of limitations, there was insufficient evidence to support the verdict, section 311.11, subdivision (a) is void for vagueness and the trial court erroneously failed to give the jury a unanimity instruction. We reject his contentions and affirm, while directing the trial court to correct errors in the minutes of the sentencing hearing that the parties agree need to be corrected.

## FACTS[3]

On January 4, 2010, defendant lived alone at his home, where he kept, inter alia, the four computers discussed below. By way of stipulation, the parties agreed to the chain of custody of those computers from the time of their seizure from defendant's house to the time they were analyzed by the prosecution and defense experts.

---

[1] The prosecution expert witness and the prosecutor explained that child pornography comprised images of children (persons under the age of 18) engaged in a sexual act or simulated sexual act or a naked child with the focus of the image on the child's genitals and child erotica comprises images of children in bikinis or underwear or otherwise nude, with their genitals not exposed, but the focus of the image on the child's covered genitals. The instruction given this jury provided that possession of either constituted a violation of Penal Code section 311.11, subdivision (a).

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] The prosecutor made the understatement of the decade when she said, at the beginning of her argument to the jury, "I know some of the testimony might have been confusing." This confusion could have been avoided.

The prosecution expert testified that Internet Explorer automatically logs into Internet history every web page the computer user goes to, and saves into temporary Internet files the images on every web page the user views, including the graphics that make up the banners on web pages. If a computer user is not savvy, he or she may be unaware that the images from every web page viewed are saved.

On one of the computers removed from defendant's home on January 4, 2010, a Compaq brand computer (Compaq), the prosecution expert found 12 thumbnail size[4] computer generated images[5] of children having sex with adults. The images had been saved to a folder on the hard drive on October 19, 2009 and December 7, 2009, and, subsequently, the folder had been deleted. The prosecution's expert could not determine whether any of the 12 images had been viewed or how they had been deleted. The fact that these images had the same creation,[6] modification and last access date suggests that they appeared on the screen while the computer user was viewing a website, but the prosecution expert could not say that the computer user opened any images beyond viewing them within Internet Explorer. The images had been saved to temporary Internet files. The fact that the December 7 creation time was within four minutes of the last access time suggested that they were consistent with advertisements on a web page. The

_____

[4] The expert described thumbnails as different images that are offered for the computer user to view when the user opens a web page.

[5] This means they were images of computer-generated children, not images of real children.

[6] This means when they were saved to the hard drive.

evidence relating to these images was not admitted to prove the charged offense, but as evidence of defendant's intent or mental state as to it. Also on the Compaq were 188 thumbnail images of girls in bikinis or panties with their legs spread, with the focal point of the images being their genitals or buttocks, nine of which were shown to the jury. The images had been saved by the Compaq's operating system to temporary Internet space on the hard drive by the computer user visiting the website on which the images appeared on October 19 and December 7, 2009, and on January 3, 2010, then the images had been deleted. The standard user name of "Compaq_administrator" was associated with these images. A web page for that user name was for defendant. The images would have come across the computer's monitor, but it could not be determined whether anyone had actually viewed them. They were in temporary Internet space, in deleted folders, meaning the images had to have been displayed on a web page and the computer user had to have visited that web page. Also on the Compaq was a web banner graphic for a child pornography image named, "Real Preteen" that had eventually been deleted. A banner graphic is saved to the hard drive when the computer user goes to the website where the graphic appears. It had been in a temporary Internet file, meaning the image had to have been displayed on a web page and the computer user had to have visited that web page. The same user name as previously mentioned was associated with this graphic as were the above-mentioned dates. Also on the Compaq were three images of females under the age of 18 years, two of whom were engaging in sex acts with adults and the other of whom was naked, on a bed, with her legs apart. Those images had also been deleted. The above mentioned user name was associated with them, as were the above-mentioned

dates.  They were in temporary Internet files, meaning the images had to have been displayed on a web page and the computer user had to have visited that web page.  On the Compaq there were also 200 more images of girls in underwear and bikinis similar to those described above, which were in unallocated clusters, meaning they had been deleted, therefore, it could not be determined when they were created or deleted.  Also on the Compaq were Google Internet searches for web pages associated with child model sites and child erotica-type content, with which the above-mentioned user name was associated and "the user profile identified [defendant] as having the email address associated with [this user name]."  They were in unallocated space.  The Compaq also contained indicia of a peer-to-peer sharing network that had been used on the computer and a movie file with a title consistent with child pornography content that had been partially downloaded, suggesting that the computer user had either cancelled the download, or deleted it after it had been completed.  The text in the network program included, inter alia, the words, "masturbation, orgasm, panties, . . . vagina, porn, kiddie, incest, preteen [and] fuck."  The prosecution expert opined that the images found on the Compaq's hard drive had been displayed on its monitor.

On a Hewlett Packard brand laptop (HP) computer taken from defendant's home on December 4, 2010, were 64 thumbnail size images of child porn or child erotica—nine of them, which depicted young or preteen girls in various states of undress, most wearing bikinis or panties, which could be viewed by the computer user on the screen, were shown to the jury.  Because they were in unallocated space, meaning they had been deleted, it could not be determined when they were created or deleted.  The 64 images

5

had been saved to the hard drive before being deleted. The images could be consistent with an advertising page or the opening page from a model's website showing the content of that website. The prosecution's expert was not able to say that these images were displayed on the HP's monitor, because they were in unallocated clusters, however, they were consistent with the images he found on the Compaq's hard drive, which he opined had been on its monitor, and with the images he found on the Apple brand computer's (Apple) hard drive (discussed below), some of which had been enlarged by the computer user. The HP laptop also contained web banner graphics of four very small images that had been spliced together to make one large, long image of preteen girls in various states of undress. A banner graphic is saved to a hard drive when a computer user goes to the website that contains the graphic. In the opinion of the prosecution's expert, the girls in all of the above-mentioned images were under the age of 18. The images could have been saved by the computer user or automatically saved by the operating system, the latter when the computer user went to the website on which the images were displayed. Also on the HP laptop were deleted Google searches—the user name associated with them was Clark, which is defendant's first name. The text that had been typed into the laptop by the computer user for these searches was "Russian ballet model," "hot preteen models," "nude preteen" and "nude preteen models." In his opinion, the images he found on the Compaq, the HP and the Apple (discussed below) were images that would be found if a computer user entered these search terms. Google suggestions, which are suggested search terms that appear when the computer user begins typing a search term into the Google web page, are not saved to the Internet history but they are saved as a

6

temporary file in unallocated space.[7]  Therefore, the Internet history shows only the

search term actually typed by the computer user and not the Google suggestions.  In the

prosecution expert's opinion, Google suggestions would not suggest a term like "nude

preteen model" and if a computer user typed "nude" into a search, a suggestion of

"preteen" would not be made.  There were no Google suggestion for "nude preteen."

When the prosecution's expert typed "preteen nude" into a Google search on this

computer, no suggestions related to child pornography or child erotica came up.  He

testified that due to federal law, Google does not suggest search terms that lead to child

pornography.  Although he could not say that the images on the HP laptop had been

displayed on its screen, they were consistent with the images that were on the Apple

computer, which were viewed and which will be described below.

On the Apple computer, also taken from defendant's home on January 4, 2010,

were 268 images, which had been deleted, and of which the nine shown to the jury were

representative.  Because the 268 images were in unallocated clusters, meaning they had

been deleted, it could not be determined when they were created or deleted.  The nine

images shown to the jury were of girls and boys, from infancy to early teen (all under

18), engaged in sexual acts or having their exposed genitals as the focus of the images.

The images ranged in size from thumbnail to full-size large images, the latter meaning

---

[7] The prosecution expert's testimony concerning whether Google suggestions are saved to the hard drive was very confusing.  First, he appeared to assert that while they were not saved to the Internet history, they were saved into Internet temporary space.  However, when asked about Internet temporary space, he began talking about deleted Internet history.

that they had been opened up, enlarged or modified by the user of the computer.  Also on the Apple laptop was a web page banner for the Lolita's Kingdom web page, deleted web pages to Lolita-type sites and child model sites for child erotica and 505 images of child erotica.

On an Acer brand mini-notebook computer, also taken from defendant's home on January 4, 2010, were deleted web page entries showing web page names relating to child models or tiny girl pictures.

In the expert's opinion, whether the Compaq, the HP or the Apple had a virus would be irrelevant because no virus would cause a Google search for the term "nude preteen" to be typed in as it was on the HP.  Also, the images found on all three of these computers were consistent with the types of Google searches that had been done on the HP (the user name associated with those searches was Clark), and according to the prosecution's expert, a virus would not put those images onto a computer.  He had never seen a virus put child pornography onto a hard drive, including the virus, Trojan.[8]  He conceded that pop-ups, which are advertisements that appear on the computer screen, could be caused by a Trojan virus.

He described a "redirect" as occurring when a computer user is on a website and is trying to close the website, but another screen appears, directing the user to another location.  At times, a computer user clicks on a page he or she thinks he or she is going to

---

[8]  Defendant states that the prosecution expert testified that he found Trojan viruses on the Compaq, citing Reporter's Transcript page 130.  However, at that page, when asked if he found them on that computer, he responded, "I said I didn't pay any attention to the viruses or Trojans, whether or not they were present."

and is actually taken to another page that has different content. Typically, these pop-ups or redirects can be viewed by the computer user and the user has to be on the Internet for them to occur. In the expert's opinion, pop-ups or redirects are irrelevant to this case because some user of the HP had to enter the terms "hot preteen models" and "nude preteen." He had never seen a website redirect to child pornography if the computer user was not originally on a child porn site. The expert conceded that in some instances, when a computer user is on an adult pornography site, there could be a link taking the user to a site with younger people (individuals that look 18 or 19 years old, but could be 14 or 15 years old). However, he had never seen a link on an adult pornography website to a site for infants or early teenagers. There was no evidence that the images he found on the Compaq, the HP or the Apple were the result of a computer user going on an adult pornography website and getting redirected to a child pornography site. The expert opined that one of the ways the images on all three computers got there was by a computer user doing Google searches for the terms that had been typed into searches on the HP (the user name associated with these was Clark), and the searches could not have taken place without the computer user typing in the search terms. He explained that when the computer user enters a search on Google, the user gets website names, and if the user clicks on one of those names, that website appears on the user's screen and the thumbnail images on that website are part of what the user views on the website. Nothing has to be clicked on the website for the thumbnail images to be seen. Of the total 1.6 million images he saw on the three computers, well over one thousand were suspected child pornography or child erotica.

The prosecution expert testified that during a Google search, a flash on the screen comes up on some websites, and even if the pop-up blocker blocks it, whatever flashed on the screen can still record to the hard drive. Several years ago, the expert's computer began flashing while he was on the Internet and everything on the pages that flashed by was saved to the hard drive.

Every child pornography or child erotica image found in this case was either in the unallocated space on the hard drives or in the Internet temporary files, the latter of which had been saved by the computer's operating system. For images in unallocated space, it cannot be determined when they were created, when they were deleted or whether they were deleted by the computer operator or the system. Typically, when a web page comes up in response to a search, the computer user has to scroll down on the page to view all of it, so that images on the bottom of the page may not be viewed by the user unless he or she scrolls down. Typically, child pornography is not advertised on the web. It is most commonly obtained in peer-to-peer programs.

The first defense expert opined that of the 248 "suspect" images from the Compaq and the HP, most, if not all, were from redirects and had not been clicked on and downloaded to either computer. A thumbnail image is saved to a hard drive either by the computer user going to the website where the thumbnail image is located, or that website popped up, or the computer user was redirected to that website. Based on his training and experience, a computer user cannot go to a legitimate website and have a pop-up or redirect to child pornography. In order for a thumbnail image to be saved to a hard drive, the computer user would have to have gone to the website where the thumbnail image

10

was located, or the website would have had to have popped-up or the computer user would have had to have been redirected to the website.

The second defense expert testified differently than the first, saying that he has seen legitimate sites redirect to child pornography sites. However, once the computer user is redirected, the redirected-to-website would be seen on the computer screen. He testified that some redirects (the computer user goes on the Internet and is redirected to a predetermined website no matter what the user does and as the user tries to get away from that website, the user is directed back to it) and some pop-ups (something unexpected appears when the computer user is on the Internet) are outside the computer user's control and the latter may be so fast that the computer user cannot intercept it or see it happening. Pop-up providers and redirect websites are constantly changing so they can operate freely. Concerning only the images on the Compaq that were dated January 3, 2010, he testified that most were created within a minute of a particular time and it was the same as the modification time and access time, meaning that none had been clicked on and viewed. Based on what he said was the small number of suspected child pornography and child erotica images relative to the total number of images found (he said there were 12,200 which had been modified on January 3, 2010), the small size of the former images and the fact that they were created, modified and accessed at the same time, he opined that they were pop-ups that appeared on some type of web page or ads or thumbnails. Of the 27 that could be traced back to a folder, they were in temporary Internet space, which was controlled by the browser, and it did not appear that they had been saved by the computer user. It did not appear to him that any had been clicked on or

11

expanded, however, he could not say whether or not someone had actually viewed them. None had been saved to any other folders in the Compaq. All the images on the Compaq that he examined were thumbnail size pictures of child erotica, and they could be viewed by the computer user while they were on the screen. There was no evidence that the Compaq's user went to a website containing child pornography and saw the thumbnail images. The images could have gotten onto the Compaq's hard drive by the website loading as an ad, the pop-up blocker could have blocked it and the ad could have been saved to the hard drive even though it did not appear on the screen. Concerning Google suggestions, he said that it is possible that if the computer user typed into a search the word "nude" Google would suggest terms that would lead the user to a child pornography website. However, he typed in "little girl" and no such suggestion came up. He testified that as to four out of the five or six Google suggestions that had been made, no images from the websites referenced by those suggestions had been saved to temporary Internet space when he typed a search into Google on a computer and did not click on and open any of the suggestions. He then used other computers and was able, with some, to duplicate this result, and not able to with others. He could not with a version of Windows that was newer than the one defendant had. The same program defendant had could duplicate the expert's results 8 out of 10 times, but no images from the websites were saved. He typed "little" then "girls" into Google and it showed some images from its image search capability which appeared below the suggestions, and those images were saved to the hard drive, but none of them were pornographic. That same search produced results on the screen that the computer user would have had to have scrolled down to in

order to see all of them. The Google suggestions that were saved appeared the same as the terms actually typed into the Google search in Internet temporary space. One of the five-to-seven viruses on the Compaq was a Trojan, and viruses can cause redirects, but he had never seen a virus that dropped child porn onto a computer. He found "a few" images of child erotica on the HP[9] and none on the Apple. All the images he examined on the Compaq and the HP were consistent with pop-ups and redirects. No child pornography or child erotica images were found in any of the computer user operated space on any of the computers.

The defendant testified, denying that he had viewed any of the images that had been shown to the jury. He denied searching for or viewing any sexually explicit images of children or images of children engaging in sexual activity. He denied knowing that any web pages he visited were automatically downloaded to his hard drive. He claimed the Apple stopped working in early 2009. He admitted using the Compaq on January 3, 2010, and it worked correctly, but the Internet on it had given him problems. He denied doing the searches on the HP under the user name Clark for nude preteen models. He did not recall searching the Internet for images of little girls on January 3, 2010.

**ISSUES AND DISCUSSION**

1. *Statute of Limitations*

Defendant contends that the People failed to carry their burden of proof that the child pornography and erotica were possessed within the 10 years statute of limitations

---

[9] The People incorrectly state that he found none.

13

applicable to violations of section 311.11, subdivision (a). (§ 801.1, subd. (b).) This burden is by a preponderance of the evidence. (*People v. Castillo* (2008) 168 Cal.App.4th 364, 369.) Prosecution is to commence within 10 years after commission of the offense. (§ 801.1, subd. (b).) Prosecution is commenced when an information is filed. (§ 804, subd. (a).) The information charging defendant with possession on or about January 4, 2010 was filed June 2, 2011. Therefore the People had the burden of proving by a preponderance of the evidence that defendant possessed the child pornography and erotica after June 2, 2001. Defendant here asserts that the prosecution failed to prove that defendant possessed the images in the unallocated spaces after June 2, 2001 because the prosecution expert testified that he was unable to say when those images were created, i.e., placed on the hard drive by the website that contained them being visited. However, the People's theory was that defendant possessed the child pornography and erotica by "having them on his computer" and there was proof, by a preponderance of the evidence, that they were on his computer on January 4, 2010. Defendant argued to the jury only that he was not aware that they were there—that they got there due to pop-ups, redirects, and/or that they had been placed far enough down on websites he viewed that he failed to see them because he had not scrolled down that far. Therefore, defendant possessed all the child pornography and erotica within the statute of limitations period.

2. *Insufficiency of the Evidence*

Relying on *United States v. Kuchinski* (9th Cir. 2006) 469 F. 3d 853 (*Kuchinski*), defendant asserts that there was insufficient evidence to prove that he knew of the

14

existence of the child pornography and erotica images that were in temporary Internet space. In *Kuchinski*, the defendant "d[id] not argue that he is not responsible for the possession of [images of child pornography]" "located in the computer's downloaded files and . . . in its deleted files." (*Id*. at p. 856.) "[W]e have declared that, '[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercised dominion and control over it.' [Citations.] Thus, [defendant] properly concedes that he did knowingly receive and possess the . . . images that he downloaded. But [defendant] was charged with [receipt and possession of] . . . images, which appeared in his cache files [i.e., Deleted Temporary Internet Files]. [¶] . . . [¶] According to the evidence before the district court, when a person accesses a web page, his web browser will automatically download that page into his Active Temporary Internet Files, so that when the site is revisited the information will come up much more quickly than it would have if it had not been stored on the computer's own hard drive. When the Active Temporary Internet Files get too full, they spill excess saved information into the Deleted Temporary Internet Files. All of this goes on without any action (or even knowledge) of the computer user. A sophisticated user might know all of that, or might even access the files. But, [*according to the government expert,*] '*most sophisticated—or unsophisticated users don't even know* [*that downloaded web pages are*] *on their computer.*' [¶] . . . '[T]he cache is a "system-protected" area, which the operating system tries to prevent users from accessing by displaying a warning that access involved an "unsafe" system command.' [Citation.] [A computer] user, who knows what he is doing, can go forward and get access to the cache files anyway.

15

[Citation.]  In the case at hand, *there was no evidence that* [*defendant*] *was sophisticated*, that he tried to get access to the cache files, or *that he even knew of the existence of the cache files.*  [¶]  There is no question that the child pornography images were found on the computer's hard drive and that [defendant] possessed the computer itself.  Also, there is no doubt that he had accessed the web page that had those images somewhere upon it, whether he actually saw the images or not.  What is in question is whether it makes a difference that, as far as this record shows, [*defendant*] *had no knowledge of the images that were simply in the cache files.*  It does.  [¶]  . . . In [*United States v.*] *Romm*, 455 F. 3d [990,] 995-98, [(9th Cir. 2006)] *the evidence demonstrated that the defendant knew about the cache files* and had actually taken steps to access and delete them.  On appeal, he conceded knowledge, and contested dominion and control, but we rejected his arguments.  [Citation.]  In so doing, we opined that 'to possess the images in the cache, the defendant must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession.'  [Citation.]  We relied upon a case wherein the Tenth Circuit Court of Appeals had declared that the defendant was properly found guilty where he knew that child pornography images would be sent to his 'browser cache file and thus saved to his hard drive.'  [Citation.]  . . .  [¶]  . . .  [¶]  Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images."  (*Id.* at pp. 856, 861-863, italics added, fns. omitted.)

16

Assuming for purposes of this argument only that *Kuchinski* is good law and binds us, contrary to defendant's assertion, its holding does not mean that there was insufficient evidence in this case that defendant knew of the existence of the images in the temporary Internet files. First, as the *Kuchinski* court pointed out, there was no evidence in that case that the defendant was even aware that the automatically downloaded web pages he had viewed were in the cache files of his computer. Moreover, the prosecution expert in *Kuchinski* testified that even most sophisticated computer users do not know that the web pages they have accessed have been automatically downloaded to his or her hard drive. There was no such evidence in this case, but there was sufficient evidence from which this jury could reasonably infer that defendant knew the web pages he was visiting were being automatically downloaded to his hard drive. That circumstantial evidence was that defendant was a sophisticated computer owner and user, having owned four computers at the time of the search of his home, in addition to 18 other media devices. Additionally, defendant testified that he had done "lots and lots [of Internet searches,]" that he had taken classes on instructional technology, during which he learned how to make and present a PowerPoint presentation, how to put together information on a teacher website, how to use a Smart Boards in the classroom[10] and how to run a projector and that he used a computer to do his lesson plans and play a game. He testified that he used computers both at work and at home. He conceded that one might have the opinion that he was pretty knowledgeable about computers. The prosecutor identified the central issue in this

_____

[10] Defendant taught boys and girls.

case for the jury during her argument as follows, "Did the defendant know that he possessed those images?" The jury answered this question in the affirmative and there was sufficient evidence to support their implied finding. *Kuchinski* does not stand for the proposition that just because a web page is automatically downloaded to the hard drive by the system, it cannot be proven that defendant was aware of this.

Defendant also points out that a decision out of the Third Appellate District disagrees with the holding in *Kuchinski*. In *Tecklenburg v. Appellate Division* (2009) 169 Cal.App.4th 1402 (*Tecklenburg*), the appellate court noted that there was not universal acceptance of the holding in *Kuchinski*. (*Tecklenburg* at pp. 1416-1417.) The *Tecklenburg* court went on to observe that, "The operative language of section 311.11, subdivision (a), provides it is a criminal offense for any person to 'knowingly possess[] *or* control[] *any . . . computer-generated image that contains or incorporates in any manner*, any film . . . , the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct.' (Italics added.)" (*Id*. at p. 1418.) The *Tecklenburg* court held, "By its plain language, section 311.11, subdivision (a), prohibits *either* possession *or* control of any child pornography . . . [*image*] . . . then broadly describes numerous forms and methods by which such child pornography may be distributed, including not just physical storage devices, but any '*computer-generated image*.' [Citation.] The statutory language reflects a far-reaching intent by the Legislature to cover . . . the new era of Internet use in an effort to reduce the exploitation of children. By its plain terms, section 311.11 includes an image of child pornography as

18

it is displayed on a computer screen as an object that can be knowingly possessed or controlled.  Section 311.11, subdivision (a), is not limited to the knowing possession or control of the computer's underlying data or files.  [¶]  We view . . . the language of section 311.11, subdivision (a), as having material differences from the federal child pornography statute at issue in *Kuchinski* . . .  [T]he federal statute does not make it illegal to knowingly possess or control an image of child pornography; only to knowingly possess the material containing the image.  In the context of computer child pornography, it is understandable that the federal courts have focused . . . on the data stored in the computer's files as that which is illegal under the federal statute to possess.  Without knowledge of such files, there can be no 'knowing' possession under the federal statute.  [¶] . . . [¶]  However, the language of section 311.11, subdivision (a), is not so limited. . . .  [It] makes it directly illegal to knowingly 'possess[] or control' any 'image' of child pornography.  [¶]  The evidence here amply supports the jury's conclusion that defendant did knowingly possess or control images of child pornography.  The evidence established defendant actively searched for child pornography Web sites, opened such Web sites, went past the homepages, clicked through images on at least one site tour, displayed multiple images of child pornography from the Web sites on his computer screen, in some cases multiple times, and enlarged some of the images from thumbnail views.  In our view, the T[emporary] I[nternet] F[ile]s . . . evidenced defendant's knowing possession or control of the images.  There was no need for additional evidence that defendant was aware of the T[emporary] I[nternet] F[ile]s . . . in order for defendant

19

to have violated section 311.11, subdivision (a)." (*Tecklenburg* at pp. 1418-1419, fn. omitted.)

As already explained, we do not need here to reject the holding in *Kuchinski* in favor of the holding in *Tecklenburg*, as we have concluded that even under the former, there was sufficient evidence that defendant knew that the images of child pornography or erotica found in the Internet temporary files had been downloaded to his hard drives. However, we note that the evidence here tracks the evidence *Tecklenburg* held was sufficient to establish that knowing possession where the computer automatically downloads the images to a temporary Internet file in certain important respects, i.e., according to the prosecution's expert, defendant actively searched the Internet for child pornography and erotica and opened such cites (although unlike the defendant in *Tecklenburg*, there was no evidence he went past the homepages or clicked through images on a site tour) and he displayed multiple images of child pornography and erotica on his computer screen, and in some cases, multiple times, enlarged some of the images from thumbnail, although not the images in the temporary Internet files. (*Tecklenburg, supra*, 169 Cal.App.4th at p. 1402.)

Defendant also asserts that there was insufficient evidence that he knowingly possessed or controlled the child pornography or erotica images in the temporary Internet space. However, as to the Compaq, the jury could reasonably conclude, based on testimony by the prosecution expert, that on two separate dates, defendant viewed the computer-generated images of children having sex with adults, which could establish defendant's intent or knowledge. The jury could also reasonably conclude that defendant

20

viewed 188 thumbnail images of child erotica, the child pornography banner graphic for "Real Preteen" and pornographic/erotica images of three female children all on three separate dates, as well as 200 additional images of child erotica. There were Google searches on the Compaq for child erotica-type content associated with defendant's name, a partially downloaded or completely downloaded, then deleted, movie file consistent with child pornography and text in the network program including words related to child pornography and erotica. On the HP, besides the 64 images of child pornography and erotica and the web banner graphic depicting child erotica, which were consistent with the images on the Compaq and the Apple, were Google searches under a user name associated with defendant for, inter alia, "nude preteen" and "nude preteen models." In the prosecution expert's opinion, the images of child pornography and erotica found on all three computers were consistent with searches using these terms. Of the 268 child pornography and erotica images on the Apple, of particular importance were those that had been clicked on and enlarged. Also on the Apple were, inter alia, 505 images of child erotica. The sheer volume of child pornography or erotica images, along with the Google searches tied to defendant, created sufficient evidence to support the verdict. As the prosecutor poignantly asked the jury, why would the same type of images be on three of defendant's different computers if he did not interface with them? She used the same argument to contradict the defense claim that the images were the result of a virus—she asserted that it was too much of a coincidence that child pornography and erotica ended up on three different computers as a result of viruses. Two of the three computers had searches for child pornography or erotica on them. While there was a possibility that

21

defendant had not viewed these images, the jury was free to believe otherwise, based on the other evidence presented.

Next, defendant asserts that absent proof that on January 4, 2010, he "had the ability to access, view, manipulate or modify" the images that were on his computer, the evidence was insufficient. He relies on a federal decision from the same circuit that gave us *Kuchinski*. (*United States v. Flyer* (9th Cir. 2011) 633 F.3d 911.) However, there is nothing in the jury instructions nor in any case construing section 311.11, subdivision (a) containing such a requirement.

3. *Section 311.11, subdivision (a) as Void for Vagueness*

Defendant contents that he cannot stand convicted of violating section 311.11 because "[b]ased on the facts presented by the prosecution, [he] could have been convicted for possession of child pornography based on nothing more than a record that [he] conducted a search for websites related to 'hot preteen models.' If this is the case, . . . 311.11, subdivision (a), prohibits searching for websites (at any time) that may contain child pornography even if those websites identified as containing child pornography (in response to the search) are never entered. [Section 311.11, subdivision (a)] fails to provide adequate notice that such conduct is prohibited and is void for vagueness. [¶] . . . [¶] [S]ection 311.11, subdivision (a) fails to provide adequate notice that entering a search term for child pornography without entering any child pornography websites constitutes criminal behavior."

Defendant's argument contains several misconceptions. First, section 311.11, subdivision (a) is abundantly clear in prohibiting the *possession or control* of child

22

pornography or erotica. It does not punish searching for such images if the search does not result in the defendant coming into the possession or control of the images. It would be like a defendant asking a friend if the friend has any child pornography he could give the defendant, but before the friend hands it over, the defendant tells the friend he really doesn't want to see it. In that case, although the defendant has "searched" for the pornography by asking his friend to give him what the friend has, he has not violated section 311.11, subdivision (a) because he stopped short of taking possession or control of the pornography. Next, the fact that defendant searched for websites using, inter alia, "hot preteen models[,]" "nude preteen" and "nude preteen models" was circumstantial evidence of his knowledge in possessing or controlling the images of child pornography and erotica that were found on his hard drives. Moreover, the fact that these images were consistent with those searches created the reasonable inference that the presence of these images on his hard drives was due to the searches defendant had conducted for them and were not the result, as the defense suggested, of pop-ups, redirects and flashes. Finally, as both the prosecution and defense experts testified, those images could not have gotten onto defendant's hard drives unless defendant (or some other user of his computer) visited the website that contained those images. Therefore, we do not understand defendant's assertion that "those websites identified as containing child pornography (in response to the search) were never entered. [¶] . . . [¶] [S]ection 311.11, [subdivision] (a) fails to provide adequate notice that entering a search term for child pornography without entering any child pornography websites constitutes criminal behavior."

23

4. *Failure to Give a Unanimity Instruction*

Citing *Tecklenburg*, defendant asserts that a violation of section 311.11, subdivision (a) occurs when a person "use[s] his computer to locate, access, and view" child pornography. While *Tecklenberg* held that "311.11 includes an image of child pornography as it is displayed on a computer screen as an object that can be knowingly possessed or controlled" (*Tecklenberg*, *supra*, 169 Cal.App.4th at p. 1418) it did not hold, nor was it presented with the issue, that that section is violated *only* by the act of locating, accessing and viewing child pornography. In fact, this holding in *Tecklenberg* addresses the knowledge requirement of section 311.11, subdivision (a), not *when* the crime occurs. Based on this faulty premise, i.e., that defendant violated section 311.11, subdivision (a) only when he located, accessed and viewed the images, defendant asserts that because the jury was not given a unanimity instruction, it was free to convict him of the crime while individual jurors did not agree on which images he possessed or controlled. He contends that he was prejudiced by this because the jury may have convicted him based solely on the images that were in unallocated space, whose date of location, access and view might have fallen outside the 10 year statute of limitations. As we explained in rejecting this argument previously, the prosecution's theory was that defendant violated section 311.11, subdivision (a) on January 4, 2010, when his computers had *all* the images of child pornography and erotica on them testified to by the prosecution's expert. Thus, the prosecution made the essential election that removed from this case the need to give a unanimity instruction. For his part, defendant denied knowingly possessing or controlling *any* of these images. It was an all or nothing proposition. Thus, there was no

24

reason for the jurors to treat any one or more images any differently that the others and no need to direct them to chose and agree upon particular images, defendant's possession and control of which constituted the crime. Moreover, as a matter of law, possession of multiple images constitutes one violation of section 311.11, subdivision (a). (*People v. Manfredi* (2008) 169 Cal.App.4th 622, 624; *People v. Hertzig* (2007) 156 Cal.App.4th 398, 401, 402.)

## DISPOSITION

The trial court is directed to amend the minutes of the sentencing hearing to reflect that defendant was ordered to reimburse supervision fees at the rate of $15 per month payable through General Collections, rather than $26, as the minutes currently state, and that terms 27-30 have been stricken, rather than that they were imposed, as the minutes currently state. In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.


We concur:

KING
J.

CODRINGTON
J.

25