THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN JOSEPHITIS, Defendant-Appellant.

First District (3rd Division)    No. 1—07—2147

Opinion filed August 19, 2009.

Thomas A. Moore, of Palos Hills, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Mary Boland, and Jennifer Streeter, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

Following a bench trial, defendant was found guilty of possessing child pornography. 720 ILCS 5/11—20.1(a)(6) (West 2006). On July 6, 2007, the trial court considered defendant's motion for a new trial and rejected his claim that it erred in denying his motion for directed verdict. Following arguments in mitigation and aggravation, the trial court sentenced defendant to 2 years' probation, 30 days in Cook County corrections, sex offender counseling, no Internet access, and no unsupervised contact with any children under the age of 17. Defendant also was required to register as a sex offender and submit to DNA testing. Defendant timely filed his notice of appeal and argues

before this court that the State failed to establish that he knowingly downloaded or possessed the images and his conviction must be reversed. For the following reasons, we affirm the holding of the trial court.

## I. BACKGROUND

At trial, the State presented the testimony of one witness, Detective James Jarolimek of the Chicago Ridge police department, and the stipulations of two experts in computer forensic examination. Jarolimek testified that in March 2004, under federal operations to curb child pornography, a federal customs agent had contacted him to inform him that defendant was potentially in possession of child pornography. Jarolimek called defendant and requested that he come to the police station.

On March 11, 2004, defendant arrived at the Chicago Ridge police department. After being advised of his *Miranda* rights, defendant was interviewed by Jarolimek and Chief Baldermann. Defendant was informed that he was suspected of possessing images of child pornography. Defendant admitted that he had joined a Web site called "Dark Feelings" using his Marriott Visa credit card. Utilizing his laptop computer, defendant viewed images of child pornography through that Web site. This information matched the information the customs agent had forwarded to Jarolimek.

Jarolimek testified that defendant indicated that he viewed nude pictures of girls between the ages of 8 and 10 on the laptop and that only he had access to that computer. Jarolimek requested defendant's credit card and he made a copy of it. Defendant was asked if they could have permission to return to and search defendant's home. Defendant agreed and signed a form granting permission to search his residence. Jarolimek and Baldermann also signed the consent form.

At defendant's residence, he led the police to his bedroom to retrieve his laptop. Jarolimek testified that defendant turned on the laptop, signed on, clicked on "favorites" and images came on the screen of naked young girls from a Web site. Jarolimek informed defendant that they wanted to take his computer with them to the police department for further examination and defendant cooperated. On March 31, 2004, Jarolimek brought defendant's computer to the United States Customs Office in Oak Brook, Illinois, for examination by Special Agent Jose Nieves. On April 15, 2004, the laptop and two CD-ROMs containing all images from the hard drive were returned to Jarolimek, who returned them to the Chicago Ridge police department and inventoried them.

Jarolimek testified that images of naked young girls were found on the hard drive and on the CD-ROMs and defendant was called back to the police department. Jarolimek and Nieves questioned defendant, who admitted that he had viewed those pictures on a prior occasion at his house. Jarolimek identified printed copies of six pictures retrieved from defendant's computer cache file that defendant admitted he had viewed. The pictures were entered into evidence. Jarolimek testified that following defendant's admissions, an assistant State's Attorney was called in and defendant gave a written statement.

Defendant's statement was published to the court and Jarolimek summarized the statement from the stand. Defendant, a 57-year-old repairman for the Chicago Transit Authority, stated that he was married with two children and that he lived with his wife, son and daughter-in-law. Defendant subscribed to Internet provider America Online and had a general user name and password for household use on a PC. Defendant also had his own separate name and password that only he used on his laptop.

Defendant admitted that the pictures entered into evidence as exhibits by the State were put on the computer by defendant and that they were on his computer on March 11, 2004. Defendant described each of the six pictures found on his computer that were attached to his statement and entered into evidence. Each picture depicted one or two naked girls posed in a lewd exhibition of their genitals, pubic area, breasts, or buttocks.

Defendant stated that to find these pictures, he would open e-mails which contained addresses for various sites with pictures of girls ranging in age from 6 to 13 years old. Once at these Web sites, defendant would subscribe to the site using his Marriott Visa credit card. Defendant stated that over the prior year he had subscribed to at least three sites and viewed and "stored" photos of naked girls aged 6 to 13. Defendant admitted that he viewed the images by himself because he had difficulty getting an erection and ejaculating without viewing them. Defendant further stated that his interest lies only in girls in that age range and that he wants to receive help.

Defense counsel did not cross-examine Jarolimek. The State next presented stipulations of two experts who conducted forensic examinations of defendant's laptop computer. The experts stated that 718 images of child pornography were found on defendant's computer depicting girls, ages 6 to 14, posing nude and engaging in various sexual acts with each other. These images were all very small files, mostly less than 100 kilobytes in size. The experts found evidence that defendant had browsed numerous sites to find these pictures.

The images were created between February 21, 2004, and March 11, 2004, and were stored in the "Temporary Internet Files" folder.

The experts stated that this folder is where the browser "caches"[1] images upon browsing a Web site and that the "naming convention, the proximity of the creation dates, and the small resolution of the images indicate that the images were generated automatically by Internet Explorer Volume 6." They stated that the only files stored in this path are automatically cached files and that the directory is typically hidden unless a user specifically requests it be open. They explained that for every Web site visited, Internet Explorer stores a compressed copy of every image for faster future visits and that each picture found on defendant's computer was one of these small, compressed images. No evidence of user-created or manually downloaded pornographic images were found.

The State rested and defendant filed a motion for directed finding. The trial court denied defendant's motion. The defense then rested without presenting evidence. Following closing arguments, the trial court determined that the State had met its burden of proof. Defendant filed a motion for new trial, arguing that there was no proof that defendant knowingly possessed the files by actively downloading or manipulating them. The trial court denied this motion, stating its concern that defendant had joined several of the Web sites in question by paying a fee with his credit card, kept that location in his "favorites" file, and actively visited those sites. The trial court concluded that these actions were more than the mere automatic cache filing of the computer program and were sufficient evidence of possession. Defendant now appeals that ruling.

## II. ANALYSIS

Defendant argues that the State failed to meet its burden of proof beyond a reasonable doubt. If a court determines that the evidence presented was not sufficient to establish a defendant guilty beyond a reasonable doubt, it must reverse. *Jackson v. Virginia*, 443 U.S. 307,

---

[1]The browser cache, pronounced "cash," is a storage mechanism utilized by the computer to speed up the loading of Internet displays. Under this system, when one views a Web site, thumbnail copies of images are automatically stored on the computer's hard drive in a folder or directory known as the cache and typically identified as temporary Internet files. This process allows the browser to more quickly retrieve the cached file to display rather than retrieving the image from the Internet. The utility of the cache may be controlled by both the user and the content provider. Additionally, the user may utilize commercial software to eliminate these files from the hard drive. See T. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files*, 19 Berkeley Tech. L.J. 1227, 1229-31 (Fall 2004).

319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). In Illinois, a reviewing court must view the evidence in a light most favorable to the prosecution, allowing all reasonable inferences to determine if no reasonable person could find the defendant guilty beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). The reviewing court does not retry the defendant or substitute its judgment for that of the fact finder. It is sufficient to affirm if the evidence taken as a whole satisfies the trier of fact of the defendant's guilt beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

Defendant was convicted of child pornography under section 11—20.1(a)(6) of the Criminal Code of 1961 (720 ILCS 5/11—20.1(a)(6) (West 2006)). The strict prohibition against possession of child pornography was enacted in an attempt "to prevent the sexual abuse and exploitation of children by 'drying up' the market for child pornography." *People v. Greever*, 122 Ill. 2d 313, 326 (1988), citing *People v. Spargo*, 103 Ill. App. 3d 280, 285 (1982). Since the incentive to produce and disseminate child pornography is to sell it for profit, this section attempts to break the most important link in the chain of distribution. *Greever*, 122 Ill. 2d at 326. Section 20.1(a)(6) provides:

"(a) A person commits the offense of child pornography who:

(6) with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child or severely or profoundly mentally retarded person whom the person knows or reasonably should know to be under the age of 18 or to be a severely or profoundly mentally retarded person, engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection[.]" 720 ILCS 5/11—20.1(a)(6) (West 2006).

Subsection (a)(1) provides detail as to several depictions or portrayals that are considered child pornography. Subparagraph (a)(1)(i) provides that a computer depiction is child pornography if it depicts a child under the age of 18:

"actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person or animal." 720 ILCS 5/11—20.1(a)(1)(i) (West 2006).

Subparagraph (a)(1)(vii) provides:

"depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." 720 ILCS 5/11—20.1(a)(1)(vii) (West 2006).

With respect to possession, subsection (b)(5) of the child pornography statute provides additional guidance:

"[(b)](5) The charge of child pornography does not apply to a person who does not voluntarily possess a film, videotape, or visual reproduction or depiction by computer in which child pornography is depicted. Possession is voluntary if the defendant knowingly procures or receives a film, videotape, or visual reproduction or depiction for a sufficient time to be able to terminate his or her possession." 720 ILCS 5/11—20.1(b)(5) (West 2006).

There is no dispute that defendant had knowledge of the nature or content of the images at issue and that they were lewd exhibitions of unclothed underage girls. Defendant admitted that he visited the illicit Web sites searching for child pornography. Defendant admitted that he paid for access to the site and viewed the pictures of nude underage girls. The evidence gathered from his computer supports this admission. There is no dispute that the images viewed by defendant were automatically saved on his computer in his browser cache in the "Temporary Internet Files" folder.

Therefore, the key determination to be made is whether defendant possessed the images. Possession is generally defined as "[t]he fact of having or holding property in one's power; the exercise of dominion over property," with courts frequently including "control" over property within this definition. Black's Law Dictionary 1201 (8th ed. 2004). Following this definition, possession may be established by either proof of actual and knowing physical possession or constructive possession.

■ Constructive possession has received extensive coverage in narcotics cases that is helpful in understanding this situation involving electronic images as a form of property. Under this line of cases, possession may be shown by proving that the defendant had knowledge of the presence of a substance and that it was in his immediate presence and control. *People v. Moore*, 365 Ill. App. 3d 53, 60 (2006). Mere presence is insufficient, there must be both the intent and capability to control the substance. So long as these elements are proven, the defendant has not abandoned the substance, and no one else controls it, constructive possession is established. *Moore*, 365 Ill. App. 3d at 60.

Prior to this court's recent decision in *People v. Scolaro*, 391 Ill. App. 3d 671 (2009), the only Illinois case to discuss the issue of possession in a conviction for possession of child pornography was *People v. Shinohara*, 375 Ill. App. 3d 85 (2007). In *Shinohara*, the defendant was investigated based on allegations that he had unwanted sexual relations with a 17-year-old girl and that he had taken digital images and video of her naked and engaging in sex acts. *Shinohara*, 375 Ill. App. 3d at 89. The defendant admitted not only that he had sexual relations with the girl, but that he had digital images of her on his

computer as well as pornographic pictures of "young people" on his computer that he had downloaded from the Internet. *Shinohara*, 375 Ill. App. 3d at 89-91. With respect to the issue of possession, the court concluded that because the defendant admitted to actively storing the pictures and video on his computer, the jury had a reasonable basis for finding that the defendant possessed child pornography with knowledge. *Shinohara*, 375 Ill. App. 3d at 121.

*Scolaro* involved a fact pattern very similar to that presented here. As in this case, the defendant admitted to searching for, and visiting, child pornography Web sites and for paying subscription fees to view pictures. The defendant denied downloading, printing or otherwise physically possessing any of the images. Proof of the defendant's possession was provided by identifying pictures viewed that had been automatically saved in the computer cache file. However, unlike this case, the defendant also admitted to visiting chat rooms and receiving, sending out, and forwarding pictures of fully naked young boys via e-mail to others that he was chatting with. In addition, the FBI identified a copy of a program on the defendant's computer that is used to eliminate or scrub files from a computer. *Scolaro*, 391 Ill. App. 3d at 673-75.

The *Scolaro* court examined several cases from foreign jurisdictions that considered this issue and the implication of files stored in the cache system. Ultimately, however, the court did not rely on that analysis to affirm the defendant's conviction. The court held that whether the defendant possessed the images depended on the question: "Did defendant specifically seek out the prohibited images and did he have the ability to exercise dominion and control over these images?" *Scolaro*, 391 Ill. App. 3d at 680. In answering in the affirmative, the court stated that the images were saved as temporary files and that the defendant reached out for the images by subscribing to the Web sites. The defendant then exercised dominion and control over the images by receiving and forwarding images. The court opined that "[e]ven if there had been no indication in the record that defendant had copied, printed, e-mailed, or sent images to others, defendant had the ability to do so when he was viewing the downloaded Web pages." *Scolaro*, 391 Ill. App. 3d at 680. In affirming the conviction for child pornography, this court also considered the fact that the defendant knew the images were being automatically saved on his computer. *Scolaro*, 391 Ill. App. 3d at 680.

■ In the instant case, while defendant told the police that he "stored" pornographic images which he had "put on" his computer, the stipulated testimony of the two forensic computer experts appears to be in conflict with this admission. Defendant also asserts that, un-

like in *Scolaro*, there is no evidence that he knew that the pornographic images were automatically saved on his computer. However, defendant concedes that when he viewed the pornographic images, he had the ability to copy, print, or send the images to others. Defendant argues that as there was no evidence that he actually took any of these actions, his conviction for child pornography cannot stand.

Defendant argues that "the mere viewing" of pornographic images of children is insufficient to establish possession under section 11—20.1(a)(6). While this assertion may be true under certain factual scenarios, for example a patron attending a theater showing a film containing child pornography,[2] we find that defendant's actions in viewing child pornography under the circumstances in the instant case constitutes "possession" within the meaning of the statute. Defendant was convicted of child pornography based on his possession of any "photograph or other similar visual reproduction or depiction by computer of any child" engaged in the activity described in subsections (i) and (vii) of section 11—20.1(a)(6). 720 ILCS 5/11—20.1(a)(6) (West 2006).

As previously discussed, subsection (b)(5) provides that "the charge of child pornography does not apply to a person who does not voluntarily possess" such a pornographic image. Further, "[p]ossession is voluntary if the defendant knowingly procures or receives a film, videotape or visual reproduction or depiction for a sufficient time to be able to terminate his or her possession." 720 ILCS 5/11—20.1(b)(5) (West 2006). The "sufficient time to be able to terminate his or her possession" operates to protect against any concern regarding the inadvertent receipt of pornographic images.

In this case, testimony and evidence were provided that defendant actively sought out illicit Web sites, paid for access, maintained the Web sites among his "favorites," and viewed numerous photos of child pornography in the three weeks leading to his arrest. In addition, when defendant viewed the pornographic images he had the ability to copy, print, or send the images to others. This clearly constitutes "possession" as proscribed by section 11—20.1(a)(6). 720 ILCS 5/11—20.1(a)(6) (West 2006).

Both parties urge this court to consider federal cases in support of their respective positions. 18 U.S.C. §2252A(a)(5)(B) (2008) provides that any individual who "knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been *** transported

---

[2]We note that subsection 2 of section 11—20.1(a) prohibits exhibiting such films and photos. See 720 ILCS 5/11—20.1(a)(2) (West 2006).

in interstate *** commerce *** shall be punished." We agree with the parties that this statute is sufficiently similar to our own statute that federal cases interpreting that provision constitute persuasive authority which may provide us guidance. See *City of Chicago v. Comcast Cable Holdings, L.L.C.*, 231 Ill. 2d 399, 414 (2008):

> "As this court's decisions have stated, we look to nonbinding federal law as persuasive authority when construing federal statutes due to the importance of maintaining uniform interpretations. *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005)."

Defendant relies principally on a holding from the United States Court of Appeals for the Armed Forces, which recently held that the fact the defendant did not know that he could access cached files created by the computer and did not download any files required reversal of a conviction for possession of child pornography. *United States v. Navrestad*, 66 M.J. 262 (C.A.A.F. 2008). The defendant, a specialist in the United States Army, was stationed in Germany, where he had an account at an Internet café where he utilized a computer kiosk terminal to have Internet chat sessions with someone he believed to be a 15-year-old boy named "Adam." However, Adam was really a New Hampshire police officer, of whom the defendant made requests for phone sex and encouraged to have sex with his younger brother and his friend. When Adam requested pictures of "guys 10-13," the defendant searched for pornographic pictures online, found and viewed some, and sent Adam a hyperlink to a site that contained child pornography. Evidence was presented that downloading files or transferring files to portable storage devices at the kiosk computers was not allowed, although, like any computer that has not had its settings modified, the browser cached files. No evidence was presented that the defendant printed any pictures or e-mailed any actual pictures or that he knew that he could do these things. *Navrestad*, 66 M.J. at 264.

The defendant admitted that he viewed the pornographic images, but argued that viewing does not prove possession. The defendant argued that he could not download or save the images or access the computer's hard drive, had no control over the Web site, and he did not print or e-mail any of the images. *Navrestad*, 66 M.J. at 264. The court found that the defendant had no control over the items on the Web site and the fact that he sent a link to that site did not give him the ability to control the contents. The court continued that the defendant did not own the computer he used, nor did he have access to the hard drive where the cached files were stored. Because of these facts and the defendant's lack of any knowledge that the photos were

stored, the court reversed the conviction for possession of child pornography. *Navrestad*, 66 M.J. at 267-68.

Defendant also relies heavily upon a case involving a sentencing dispute. *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006). In *Kuchinski*, the Ninth Circuit held that the government failed to prove that a defendant possessed thousands of pornographic images where the only evidence presented was that those images were in cached files. The defendant in *Kuchinski* faced substantially higher penalties under sentencing guidelines for additional files found in his cache files. The defendant admittedly received and possessed 110 images that he downloaded, but contested the use in aggravation of thousands more images in his cache files because he had no knowledge of how images were automatically cached. *Kuchinski*, 469 F.3d at 861-63.

The Ninth Circuit began its discussion of the issue of the defendant's knowing possession by stating: "We have made it plain that a person does knowingly receive and possess child pornography images when he seeks them out over the [I]nternet and then downloads them to his computer. In fact, we have declared that, '[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it.' " *Kuchinski*, 469 F.3d at 861, quoting *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006). In agreeing with the defendant, the *Kuchinski* court relied on evidence presented at trial that when a person accesses a Web page, his Web browser will automatically download that page into the computer's "Active Temporary Internet Files." When those "[f]iles get too full, they spill excess saved information into the Deleted Temporary Internet Files. All of this goes on without any action (or even knowledge) of the computer user." *Kuchinski*, 469 F.3d at 862. Thus, unlike in our case, the photos found in the cache may never have even been seen by Kuchinski.

The court found that it was improper to sentence the defendant on the additional files because of his lack of knowledge on the cached files, stating:

> "Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control." *Kuchinski*, 469 F.3d at 863.

We find *Kuchinski* to be of no assistance to defendant. Unlike the federal sentencing statute at issue in *Kuchinski*, section 11—20.1(a)(6)

does not provide for a higher level of punishment based on the number of pornographic issues possessed. Further, *Kuchinski* did not reverse the defendant's child pornography conviction based on the 110 images that he downloaded. In the instant case, defendant admitted viewing numerous images of child pornography and specifically identified six pictures of those images that were taken from his computer.

The State relies upon *Romm* and *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002), both of which were discussed by the *Kuchinski* court. In *Romm*, the defendant challenged the sufficiency of the evidence on a conviction for possession of child pornography. The *Romm* court stated that, in the electronic context, a person can receive and possess child pornography without downloading images if he or she seeks it out and exercises dominion and control. *Romm*, 455 F.3d at 998. Testimony was provided that when the images were viewed on the screen and cached, the defendant could print, enlarge, copy, e-mail or save the images and that the defendant had enlarged several images at issue. Therefore, the court found that the defendant exercised control over the images at that time. However, in concluding that possession was established, the court found that knowledge that the images were stored on a disk or other tangible material was required and proven by the defendant's characterization that he saved or downloaded the images to view them and then deleted them. *Romm*, 455 F.3d at 1000-01.

As in this case, the defendant in *Tucker* argued that he did not possess child pornography because he merely viewed images through his browser. However, the defendant conceded that he was aware of the browser cache files and that he deleted his cache file contents after each viewing. Following the ordinary meaning of possession, the Tenth Circuit agreed with the district court that, even though the defendant did not personally save or download the images, the evidence showed he had control over the cached files. *Tucker*, 305 F.3d at 1204. The court held that possession was established when the defendant sought out child pornography and viewed it, knowing that the files would be saved on the computer. *Tucker*, 305 F.3d at 1205.

Testimony was presented at trial that a cache file can be accessed and attached to an e-mail, printed, posted on the Internet, or saved as a regular file to a hard disk or floppy disk. The court rejected the defendant's claim that he had no possession because the computer saved the files against his will and his comparison to the situation of police involuntarily carrying a drunk into public and arresting him for public intoxication. While the defendant "may have wished that his Web browser did not automatically cache viewed images on his computer's hard drive," possession was proven because the fact

remained that he intentionally sought and viewed child pornography knowing that the files would be cached. *Tucker*, 305 F.3d at 1205.

The State agrees that the presence of files in the cache alone is not sufficient to prove possession, but adds that other state courts have examined this issue and affirmed convictions for possession under the constructive possession theory. See *Arizona v. Jensen*, 217 Ariz. 345, 173 P.3d 1046 (App. 2008); *Ward v. Alabama*, 994 So. 2d 293 (Ala. Crim. App. 2007); *State v. Mobley*, 129 Wash. App. 378, 118 P.3d 412 (2005). In considering whether the defendant knowingly received or possessed child pornography, the *Jensen* court provides a helpful overview of the issue and the current split of opinion in case law. Ultimately, the *Jensen* court held that, despite the defendant's professed lack of knowledge of the cache files, the finding that he knowingly received images was implicit in his active search for images by using key phrases and searching for hours on his computer, nearly 25,000 hits for the illicit Web sites, and the presence of 3 images in the cache files. *Jensen*, 217 Ariz. at 351-52, 173 P.3d at 1052-53. The court highlighted that the concern of inadvertent receipt of images resulting in a violation was of no import because it lacked the necessary mens rea for the fact finder to find one guilty. *Jensen*, 217 Ariz. at 351, 173 P.3d at 1052.

One case cited by the *Jensen* court, *Commonwealth v. Diodoro*, 2007 PA Super. 256, is also worth noting in our discussion. In *Diodoro*, the defendant admitted to knowingly accessing sites on the Internet containing child pornography and to viewing those images. However, the defendant did not save or download the images, did not know about cache files, and did not pay to enter the site. The only issue before the *Diodoro* court was whether the defendant's actions were sufficient to prove the statutory requirement of knowing possession or control. The court found that the totality of the circumstances was sufficient to support the jury's conclusion the defendant controlled the images.

Specifically, the court stated that the "actions of operating the computer mouse, locating the Web sites, opening the sites, displaying the images on his computer screen, and then closing the sites were affirmative steps and corroborated his interest and intent to exercise influence over, and, thereby, control over the child pornography." *Diodoro*, 2007 PA Super. 256, ¶11. In further support, the court noted that testimony established that defendant had to actively click icons to view successive images. Furthermore, during the time the images were viewed he could download, print, copy or email the images. *Diodoro*, 2007 PA Super. 256, ¶11.

Defendant argues that he was merely in the vicinity of the pornographic material and that, unlike in *Scolaro, Shinohara* and

*Tucker*, he never manipulated the images or actively downloaded them to be in actual or constructive possession of them. Defendant contends that the evidence is clear that he never downloaded images or accessed any images, but only viewed images through Internet sites that he had no control over. Furthermore, defendant asserts that he had no knowledge of the cached files or how the browser cache system worked. Defendant therefore places principal reliance on *Navrestad,* claiming that he simply viewed images just as the defendant in that case did.

We agree with the holding in *Kuchinski,* that the mere presence of images or files in the cache is not sufficient to support a finding of possession. However, these files, even absent knowledge of their presence or how to control them may be proper evidence of past possession. With analysis and testimony of a forensic expert, it may be established that a defendant viewed images at a certain time and date. In this case testimony and evidence were provided that defendant actively sought out the illicit Web sites, paid for access, maintained the Web sites among his "favorites," and viewed numerous photos of child pornography in the three weeks leading to his arrest. The evidence also demonstrated that defendant had the opportunity to e-mail, save, print, copy, or otherwise manipulate the images while he viewed them.

*Jensen, Diodoro* and the *dicta* of *Scolaro* support our finding that evidence of an extensive search or paying for access and viewing images on a computer establishes both knowledge and dominion and control to support a possession finding. Based on the testimony at trial, defendant actively sought out and paid for access to child pornography Web sites and viewed over 700 images that were found in the cache files of defendant's computer with various origin dates from two months prior up to the date defendant's computer was confiscated. This is sufficient to show that defendant had knowledge of the contents and possession for a period long enough to terminate possession. Defendant and others who pay for access and view these images support an industry which exploits the most vulnerable people in the world, an industry which the statute attempts to destroy. Any other finding would completely frustrate the purpose of the child pornography statute.

## III. CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

THEIS and QUINN, JJ., concur.